IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiffs,

vs.

SCOTT USHER, ROBIN USHER,

Defendants.

**4:13CR3057**

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant Robin Usher's Motion to Sever her trial from that of her co-defendant, Scott Usher, (Filing No. 34). For the reasons set forth below the motion is denied.

BACKGROUND

Defendants Scott and Robin Usher, husband and wife, are named in a five-count indictment charging each with one count of conspiracy to commit wire fraud and four substantive counts of wire fraud. (Filing No. 1). The indictment alleges Scott Usher held himself out as an inventor who had designed valuable pieces of technology capable of, among other things, operating center pivot irrigation systems with solar power and inexpensively desalinating sea water.

The indictment alleges that Scott Usher solicited money from investors and lenders through intentional misrepresentations. Specifically, Scott Usher allegedly represented to potential investors and lenders that certain individuals, companies, and governments were interested in purchasing the right to use certain technologies. Further, he allegedly represented that investors and lenders would receive significant profits. The indictment alleges Scott Usher's representations about meeting with government leaders, foreign dignitaries, and other well-known individuals were entirely fabricated.

The indictment also charges Robin Usher with conspiracy, alleging she executed documents establishing a number of businesses that were purportedly created to market Scott Usher's technologies, represented that Scott Usher was attending or did attend meetings with foreign officials, and participated in the conversion of alleged victims' money to purposes unrelated to the Ushers' businesses.

As part of the government's investigation, law enforcement officers conducted a non-custodial interview of Scott Usher. An attorney was present for Scott Usher. Robin Usher was also present. Robin Usher only minimally participated in the interview and she did not answer any questions directly. During the interview, Scott Usher admitted he did not meet with, or even know, many of the individuals he had previously represented were interested in his technologies. Scott Usher also admitted to using funds from investors for his personal expenses.

Scott and Robin Usher initially appeared before the court on June 6, 2013 and based upon the Final Progression Order, (Filing No. 26), were originally scheduled for a joint trial on March 21, 2014. The trial was later continued pending the resolution of several pretrial motions, including Robin Usher's motion to sever her trial from Scott Usher's trial. (Filing No. 34).

An evidentiary hearing on Robin Usher's Motion to Sever was held on May 15, 2014. At that hearing, counsel for Robin Usher proffered a statement reflecting the substance of Scott Usher's anticipated testimony if the trials were severed and he testified on her behalf. Robin Usher offered a CD recording of the police interview of Scott Usher.

At the hearing, the United States elicited testimony from Special Agent Michael W. Maseth, who was present during the interview. He confirmed that none of the admissions made by Scott Usher included or mentioned Robin Usher. And Robin Usher made no incriminating statements.

ANALYSIS

Generally, persons charged in a conspiracy or jointly indicted on similar evidence should be tried together. U.S. v. Lewis, 557 F.3d 601, 609 (8th Cir. 2009); United States v. Brown, 331 F.3d 591, 595 (8th Cir. 2003). Even when joinder is proper under Rule 8, pursuant to Rule 14 of the Federal Rules of Criminal Procedure, a judge may order severance if joinder at trial will prejudice the defendant. U.S. v. Lewis, 557 F.3d 601, 609 (8th Cir. 2009); United States v. Wadena, 152 F.3d 831, 849 (8th Cir. 1998). Rule 14 provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection in camera any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

Fed.R.Crim.P. 14.

When defendants are properly joined, there is a strong presumption for a joint trial because it affords the jury the best perspective on all of the evidence, thereby increasing the likelihood of a correct outcome. Lewis, 557 F.3d at 609. This presumption can only be overcome if the prejudice is "severe or compelling." United States v. Crumley, 528 F.3d 1053, 1063 (8th Cir.2008). "[A] defendant must show 'real prejudice,' that is, 'something more than the mere fact that [s]he would have had a better chance for acquittal had [s]he been tried separately.'" United States v. Mickelson, 378 F.3d 810, 817 (8th Cir. 2004) (quoting United States v. Oakie, 12 F.3d 1436, 1441 (8th Cir. 1993) (citing United States v. Adkins, 842 F.2d 210, 211-12 (8th Cir.1988)).

A defendant seeking severance has the heavy burden of demonstrating that a joint trial will impermissibly infringe on her right to a fair trial. United States v. Baker, 98 F.3d 330, 340 (8th Cir. 1996).

> Joint trials of defendants indicted together are generally conducted because they promote efficiency and the interests of justice, Zafiro v. United States, 506 U.S. 534, 538, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), but Rule 14 permits severance if "it appears that a defendant or the government is prejudiced by the joinder." Fed.R.Crim.P. 14. Severance is appropriate "only if there is a serious risk that joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539, 113 S.Ct. 933. It is not an abuse of discretion to deny a severance motion when not every joined defendant has participated in every offense charged, Delpit, 94 F.3d at 1143-44, when evidence which is admissible only against some defendants may be damaging to others, id., or when there is varying strength in the evidence against each defendant. United States v. Dierling, 131 F.3d 722, 734 (8th Cir.1997).

United States v. Lee, 374 F.3d 637, 646 (8th Cir. 2004).

In this case, Robin Usher argues she cannot receive a fair trial if she is tried with Scott Usher. Specifically she argues that evidence admissible against Scott Usher would not otherwise be admissible against her and, as a result, Robin Usher will be prejudiced. Through briefing and the evidentiary hearing, Robin Usher has expressed several specific concerns relating to the admissibility of some evidence and the inadmissibility of other evidence. Those specific concerns are addressed below.

Evidence from attorney Lee Merritt.

Attorney Lee Merritt served as Scott Usher's legal counsel and assisted him with creating several business entities for Scott Usher's use in developing, marketing and selling his technologies. Merritt later became an investor and an alleged victim of the conspiracy alleged in this case. Law enforcement officers interviewed Merritt and the government has

obtained at least some of the communications between Merritt and Scott Usher. See Filing No. 36-10.

Robin Usher asserts that although she signed many of the documents establishing the business entities and/or served as an officer for some or all of the entities, she lacked knowledge of the communications between Merritt and Scott Usher and only performed ministerial functions for the businesses. She argues that if communications between Scott Usher and Merritt are admissible against Scott Usher, she will be prejudiced.

As explained in United States v. Yielding, 657 F.3d 688, 705-07 (8th Cir. 2011), federal law governs the admissibility of Scott Usher/Lee Merritt communications.

> In the absence of a relevant federal rule, statute, or constitutional provision, federal common law governs questions of privilege in federal criminal proceedings. Fed.R.Evid. 501; United States v. Espino, 317 F.3d 788, 795 (8th Cir.2003). "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). This privilege protects confidential communications between a client and her attorney made for the purpose of facilitating the rendition of legal services to the client. United States v. Horvath, 731 F.2d 557, 561 (8th Cir.1984). The privilege belongs to and exists solely for the benefit of the client. Henderson v. United States, 815 F.2d 1189, 1192 (8th Cir.1987).

Yielding, 657 at 705-07.

The attorney-client privilege is not absolute. For instance, where the attorney acts as a scrivener or a business advisor; or where the client consults the lawyer to "further a continuing or contemplated criminal or fraudulent scheme" the privilege is either lost or does not attach. United States v. Horvath, 731 F.2d 557, 561-62 (8th Cir. 1984); see also United States v. Spencer, 700 F.3d 317, 320-21 (8th Cir. 2012)(citing Horvath for the proposition that an attorney serving as a business advisor is not rendering legal services).

In this case, the government will undoubtedly argue Merritt may testify because of one of the exceptions to the attorney-client privilege noted above.[1] If Merritt agrees to testify on behalf of the government, Robin Usher will have the opportunity to either depose Merritt or subject him to cross-examination regarding his contact, if any, with Robin Usher.

Even if the attorney-client privilege applies and Merritt is prevented from testifying at a joint trial, the type of testimony Robin Usher would elicit from Merritt would likely not be subject to attorney-client protection. That is, if she seeks to have Lee Merritt confirm that he did not represent Robin Usher, and that Robin Usher did not meet with him and was not present for any substantive communications with Scott Usher, these statements are neither privileged nor otherwise protected as confidential. See, e.g., In re Grand Jury Proceedings (85 Misc. 140), 791 F.2d 663, 665 (8th Cir. 1986)(the identity of one's client and matters existing in the public eye are generally not confidential communications).

Lastly, there is no guarantee Scott Usher would be willing to waive the attorney-client privilege if the trials are severed. This is particularly true if Robin Usher's trial proceeds before Scott Usher's trial. Thus, to the extent the attorney-client privilege attached to communications between Scott Usher and Merritt, and Robin Usher seeks to elicit testimony on the protected subject matter, there is no guarantee Scott Usher will waive the privilege even if the trials are severed.

In short, the court does not believe Robin Usher has provided sufficient evidence to demonstrate the testimony, or lack thereof, by Lee Merritt will create prejudice to Robin Usher necessitating a severance of her trial.

---

[1] If the statements Scott Usher made to Merritt are admissible and the government meets its burden of proving the existence of a conspiracy, those statements may also be admissible against Robin Usher. "Coconspirator statements are properly admitted if the government proves by a preponderance of the evidence that (1) a conspiracy existed; (2) both the declarant and the defendant were members of the conspiracy; and (3) the declarant made the statement in the course and in furtherance of the conspiracy." United States v. Arias, 252 F.3d 973, 977 (8th Cir. 2001).

Interview of Scott Usher.

Under Bruton v. United States, 391 U.S. 123 (1968), where one codefendant implicates another codefendant in a pretrial confession and that confession is admissible at trial, severance of the codefendants trials is necessary.

> In Bruton, the Supreme Court held that in a trial where two or more defendants are tried jointly, the admission of a nontestifying codefendant's confession that expressly implicates the defendant violates the defendant's Sixth Amendment confrontation rights, even if the district court gave the jury limiting instructions to consider the confession only against the codefendant who confessed. Id. at 126, 88 S.Ct. at 1622–23; United States v. Escobar, 50 F.3d 1414, 1422 (8th Cir.1995) (applying Bruton). However, "[i]f a codefendant's confession does not incriminate the defendant on its face, but does so only when linked to additional evidence, it may be admitted if a limiting instruction is given to the jury and the defendant's name is redacted from the confession." Flaherty, 76 F.3d at 972 (citing Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987)). Furthermore, Bruton does not apply at all when a codefendant's statements do not incriminate the defendant either on their face or when considered with other evidence. Escobar, 50 F.3d at 1422

United States v. Melina, 101 F.3d 567, 569-70 (8th Cir. 1996)(abrogated on other grounds).

Robin Usher asserts her presence at the law enforcement interview of Scott Usher – during which he made certain admissions regarding false representations made to investors and lenders – warrants severance of their trials. Having reviewed the video recording of the interview in full and reviewing the corresponding transcript of the interview the court does not share Robin Usher's concerns.

Scott Usher does not make any statements implicating Robin Usher or suggesting any bad intent on her part. His admissions involved statements such as:


AGENT MASETH: So when, when did you meet Rex Tillerson[2]?

SCOTT USHER: Okay, so I not only thought that I had met Rex Tillerson. I thought that I met hundreds of people. . . .

. . .

SCOTT USHER: Absolutely. Uh there were hundreds. Literally there were hundreds and hundreds and hundreds of people. If I saw someone on the news or Lee said someone to me or anyone made reference to me at all ... I. I thought that I knew them.

AGENT MASETH: Okay and you had meetings with them?

SCOTT USHER: Absolutely.

. . .

SCOTT USHER: It, it dep---it depended. Like when I thought I was with the president. Sometimes I would see the president on TV and I thought the president was talking to me. If I thought I was uhm on conference calls and stuff, sometimes I would just be sitting just staring out the window. But I thought I was on a conference call.

AGENT MASETH: Okay. And at the same time, so, but you're still drawing a paycheck. Right?

SCOTT USHER: Absolutely.

AGENT MASETH: You're taking money.

SCOTT USHER: Absolutely.

AGENT MASETH: From the investors who have put money into your company . . .

SCOTT USHER: I didn't know I was delusional. . . .

Filing No. 46-1 at CM/ECF pp. 37 & 40.

---

[2] Rex Tillerson is the Chairman and Chief Executive Officer of Exxon Mobil Corporation.

Scott Usher admitted to lying to investors and lenders about people he met and about famous or important people who he claimed were interested in his various technologies and companies. He also admitted to using money from his corporations for personal expenses. There is no admission by Scott Usher that he intended to deceive potential investors or lenders or that he made misrepresentations for the purpose of soliciting additional funds from investors or lenders. He never associated Robin Usher with his admissions about the misrepresentations he made to investors and/or lenders. That is, he never claimed Robin Usher played any part in duping the investors and lenders. Simply put, Scott Usher's statements neither directly incriminated Robin Usher, nor could they be used to incriminate her when considered with other evidence.[3]

Robin Usher worries her mere presence, and silence, at the interview will create prejudice and her case will be tainted. Any such concerns can be alleviated with a limiting jury instruction, instructing the jury not to attribute any statements made by Scott Usher in the interview to Robin Usher. See Zafrino, 506 U.S. at 539.

Testimony of Scott Usher.

Finally, Robin Usher asserts that if the trials are severed, she could call Scott Usher as a witness and he would provide exculpatory testimony on her behalf. Robin Usher must demonstrate that she would call Scott Usher as a witness at the separate trial, that he would testify, and that his testimony would be substantially exculpatory. See United States v. Oakie, 12 F.3d 1436, 1441 (8th Cir. 1993); United States v. Voss, 787 F.2d 393, 401 (8th Cir. 1986). To be substantially exculpatory, "the testimony must do more than merely tend to contradict a few details of government's case." United States v. Darden, 70 F.3d 1507, 1527

[3] Even if Scott Usher had expressly incriminated Robin Usher during the interview, those statements would likely be admissible against her as adoptive admissions and would not be excludible under Bruton. See United States v. Schroeder, 433 F.2d 846, 850 (8th Cir. 1970); see also United States v. Kehoe, 310 F.3d 579, 591 (8th Cir. 2002). Additionally, if the government meets its burden of establishing a conspiracy, any statement incriminating Robin Usher would likely be admissible. Fed. R. Evid. 801(d)(2)(E).

(8th Cir. 1995)(internal citations omitted). Conclusory statements, without supporting foundation and facts, cannot provide the substantially exculpatory evidence needed to support a motion for severance. Mickelson, 378 F.3d at 817 (holding severance was not warranted where, had the cases been tried separately, a co-defendant would have testified "there was no conspiracy or agreement to manufacture methamphetamine").

Robin Usher's request for severance, based on the potential testimony of Scott Usher, creates logistical problems. That is, if Robin Usher's trial proceeds prior to Scott Usher's, he undoubtedly will not testify on her behalf as he would be subject to rigorous cross-examination by the United States, with his testimony later used against him at his own trial. Likewise, even if Scott Usher's trial proceeds before Robin Usher's, there is no guarantee he would testify on her behalf, particularly if he is dissatisfied with the results of his trial and is considering or decides to appeal.

It is not clear that any testimony elicited from Scott Usher will exculpate Robin Usher. At the motion hearing, Scott Usher's attorney read Scott Usher's written responses to several questions posed by Robin Usher's attorney. Based on the responses to these questions, Scott Usher would testify that Robin Usher asked how much money the businesses were generating or would generate, but she did not know the specific details about the finances of the businesses; she met with investors and lenders only socially; and Scott Usher never told her that many of the alleged meetings were not taking place.

This information cannot be considered substantially exculpatory. Robin Usher need not have a detailed knowledge of the alleged artifices to participate in the conspiracy and be found guilty on the counts in the indictment. The fact that she only met with investors and lenders in social settings is not exculpatory in and of itself. To the contrary, the government states Robin Usher made misrepresentations during social events; including falsely stating she met with Chinese officials during a dinner with investors or potential investors at a restaurant in Lincoln, Nebraska.

Scott Usher cannot testify as to what Robin Usher knew or suspected. He may be able to explain what he told her about the alleged meetings, but even if he never told Robin Usher the alleged meetings were fiction, this testimony is not, in and of itself, substantially exculpatory. The fact that Scott Usher was the party concocting the stories about meeting foreign dignitaries and famous people may assist Robin Usher's defense, but it is not sufficiently exculpatory as to justify severance. See United States v. Taylor, 253 F.3d 1115, 1116 (8th Cir. 2001) (holding severance was not required even though a son's joint trial with his father prohibited the son from introducing evidence of his father's out-of-court statement implicating the father and a cousin, not the father and the son, as the masterminds of a bank fraud conspiracy). Scott Usher's testimony may contradict details about the government's case. For example, he may testify that he did not hear Robin lie about any meetings, while the government claims Robin Usher did lie to others about attending meetings. But evidence which merely contradicts details of the government's case is not considered substantially exculpatory. See Oakie, 12 F.3d at 1441.

Based upon the proffered testimony of Scott Usher, the court finds there is no guarantee he would testify at a separate trial. And even if Scott Usher did testify on behalf of Robin Usher during a separate trial, this testimony would not be substantially exculpatory as to Robin Usher. Thus, under the evidence presented, the fact that Scott Usher's testimony will not be available if the Robin and Scott Usher are tried together does not warrant severing their trials.

Accordingly,

1) Defendant Robin Usher's Motion to Sever her trial from that of her co-defendant, Scott Usher, (Filing No. 34), is denied.

2) The jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on **July 14, 2014**, or as soon thereafter as the case may

be called, for a duration of four (4) trial days. Jury selection will be held at the commencement of trial.

June 4, 2014.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.